UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-10686
_____


JOHN FEARANCE, JR.,

Petitioner-Appellant,

versus

WAYNE SCOTT, Director,
Texas Department of Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:92 CV 0488 X)
_____

March 21, 1995

Before JONES, DUHÉ and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Appellant Fearance has been tried and sentenced to death twice for stabbing Larry Faircloth nineteen times and causing him to bleed to death in his own bedroom, during Fearance's aborted burglary. Following his second trip through the state courts, Fearance sought § 2254 habeas relief in federal district court.

_____

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

The court rejected Fearance's petition and denied a certificate of probable cause to appeal.

Under Fed. R. App. Proc. 22(b), the standard for granting a certificate of probable cause is whether the habeas petitioner has made a substantial showing of the denial of the federal right. Barefoot v. Estelle, 463 U.S. 880 (1983). This standard requires the petitioner to "demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" Barefoot, 463 U.S. at 893 n.4 (quotation omitted) (alterations in original). Because a court should not grant the certificate of probable cause where the petitioner's claims are "squarely foreclosed by statute, rule or authoritative decision, or . . . lacking any factual basis in the record," id. at 894, this court cannot grant a CPC here.

## I.

Fearance was convicted of intentionally killing Larry Faircloth after breaking into his apartment. He argues that he has a colorable constitutional claim that the alternative theory alleged by the state in its indictment was constitutionally impermissible. Specifically, the indictment charged that Fearance had one or both of two prohibited intents upon breaking into the apartment: either Fearance entered the residence with the intent to commit theft and in the course of committing a burglary committed an intentional murder or the state charges that he entered the victim's residence with intent to commit the murder of

2

the victim and committed an intentional murder during the course of the burglary. Petitioner alleges that the second alternative theory violates the due process clause in the fourteenth amendment to the Constitution.

Fearance reasons that application of the underlying felony element of capital murder in the second theory means that in Texas, every murder committed during a criminal trespass would be subject to prosecution as a capital murder. According to Fearance, the burglary does not perform the constitutionally required narrowing in these circumstances because, under this theory of the indictment, all murders committed during the commission of criminal trespass are capital murders. Consequently, Fearance urges that the required narrowing underlying the Supreme Court's approval of the Texas capital sensing scheme in Jurek v. Texas, 428 U.S. 262 (1976), did not occur in his case.

Although this may be an interesting issue, the principles of Teague v. Lane, 490 U.S. 288, 109 S. Ct. 1060 (1989), preclude this court from considering the merits. Teague and its progeny allow a federal court on collateral review to apply only constitutional principles *dictated* by precedent existing at the time defendant's conviction became final. Id. at 301.[1] Penry v. Lynaugh, 492 U.S. 302 (1989), unequivocally extends this principle to capital cases and mandates that we address the retroactivity issue as a threshold matter.

---

[1] The two exceptions recognized in Teague are not even arguably applicable here.

3

In essence, Fearance argues that a death sentence is unconstitutional if it is based on an aggravating factor that duplicates an element of the underlying felony because such a felony does not genuinely narrow the class of persons eligible for the death penalty. To avoid the Teague bar, Fearance must establish not only that this was true, but that it was unmistakably true when he was convicted for the second time in 1981. That he cannot do. Indeed, Fearance's argument on appeal of the district court's denial of CPC demonstrates this conclusively. In attempting to justify probable cause for appeal, Fearance notes "a split in jurisdictions considering the issue" and a "split in judicial thinking" (which correctly states the standard for granting a CPC). It simultaneously prevents, however, relief in a habeas proceeding because such a holding is foreclosed unless petitioner can "say that all reasonable jurists would have deemed themselves compelled to accept" his claim. Graham v. Collins, 113 S. Ct. 892, 898 (1993). Fearance's concession that jurists have differed on the merits of this claim prevents this court from reaching the merits.[2]

## II.

Fearance requested an instruction on the lesser-included offense of murder at his trial. The trial court denied the

---

[2] Indeed, it appears as though the opposite result was dictated by precedent. In Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985), the Court of Appeals adopted petitioner's reasoning here. However, the same court of appeals overruled Collins in light of the Supreme Court's decision in Lowenfield v. Phelps, 484 U.S. 231 (1988). See Perry v. Lockhart, 871 F.2d 1384 (8th Cir.), cert. denied, 493 U.S. 959 (1989). Hence, we are aware no federal courts that would invalidate Fearance's conviction.

instruction, and the Texas Court of Criminal Appeals upheld that action. See Fearance v. State, 771 S.W.2d 486, 511 (Tex. Crim. App. 1988). He then raised the issue whether this denial contravened Beck v. Alabama, 447 U.S. 625 (1980), in his petition for federal habeas relief. Again we find no basis for an appeal of the dismissal of this claim.

Although Beck itself was limited to a statute that barred the trial judge from giving the requested instruction, this court has extended the rationale of Beck to cases in which a trial court refuses to give an instruction that is available under state law. Lincecum v. Collins, 958 F.2d 1271, 1275 (5th Cir.), cert. denied, 113 S. Ct. 417 (1992) (citations omitted). To be entitled to such an instruction on a lesser-included offense, a capital defendant must demonstrate that a "rational juror, given all the facts, [could acquit him] of capital murder and [convict] him of [the] lesser included offense." Andrews v. Collins, 21 F.3d 612, 629 (5th Cir. 1994) (citation omitted) (alterations in original). "This necessarily requires a showing that the facts of the case and the laws of the state warrant such an instruction." Hill v. Black, 920 F.2d 249, 251 (5th Cir. 1990), *modified*, 932 F.2d 369 (5th Cir. 1991). Under Texas law, a lesser-included offense instruction must be given if there is "some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense." Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986).

The state court determined that there was no evidence to support the lesser-included offense. Fearance, 771 S.W.2d at 511:

5

"Appellant presented no evidence during his case in chief that he did not intend to kill Larry Faircloth. None of the witnesses for the state, on direct examination or cross examination, testified that appellant's actions were unintentional. The evidence at trial did not raise the lesser-included offense of murder.".

Because the state court held that no evidence supported a verdict of murder as opposed to capital murder under state law, no rational jury could have convicted Fearance only of murder. This court has no authority to revisit that interpretation of the Texas Penal Code. Because the state law prevented the jury from finding that "the petitioner committed murder," the trial court's failure to instruct the jury on this offense was not constitutional error. Cantu v. Collins, 967 F.2d 1006, 1014 (5th Cir. 1992).[3] In response to the dearth of evidence of lack of intent on the record, which compelled the state court to reject the propriety of a murder

---

[3] In Lincecum v. Collins, 958 F.2d 1271, 1277 n.6 (5th Cir. 1992), this court did not resolve whether such a question was purely a matter of state law or an application of the section 2254(d) presumption of correctness. Nevertheless, since Fearance has not argued or identified any of the statutory exceptions to the presumption of correctness the difference is immaterial here. Moreover, even if we were to independently review the state court's conclusion, the facts recited by the magistrate judge in rejecting this contention are compelling:

(1)  shortly before the commission of the murder, Fearance had broken into another home where he stole three knives;

(2)  those knives were subsequently identified as the weapons used in killing Larry Faircloth and stabbing his wife;

(3)  Fearance entered Faircloth's bedroom and immediately began to struggle with him and his wife;

(4)  Fearance repeatedly stabbed Larry Faircloth and continued to do so after he had been rendered defenseless; and

(5)  Larry Faircloth was stabbed nineteen times.

No rational jury could believe that petitioner acted without intent to kill.

6

jury instruction, Fearance alleges that this prerequisite unconstitutionally shifts the burden of proof on the element of the defendant's intent. Specifically, Fearance cites Mullaney v. Wilbur, 421 U.S. 684, 95 S. Ct. 1881 (1975), for the proposition that the state cannot benefit from the defendant's failure to adduce evidence in support of its allegations of criminal intent. He is mistaken. There was no requirement that Fearance testify nor that he produce any particular evidence in order to support the requested lesser-included offense jury instruction. All that was necessary was that some evidence supported allowing such an instruction. It does not matter how the evidence gets on the record, but it must be there in some form or another.

## III.

The Texas Court of Criminal Appeals reversed Fearance's first capital murder conviction and death sentence after finding that a prospective juror had been improperly excused in violation of Adams v. Texas, 448 U.S. 38 (1980), and Witherspoon v. Illinois, 391 U.S. 510 (1968). Fearance v. State, 620 S.W.2d 577, 579 (Tex. Crim. App. 1980) (*Fearance I*). Although the error only affected the sentencing phase of his first trial, Texas procedure did not authorize a new punishment hearing absent a complete retrial.

Fearance argues that the Double Jeopardy Clause prohibits this retrial because it forced him to relitigate the question of his guilt. This court has rejected such a claim where the reversal, based upon punishment-phase error, is not tantamount to implied acquittal on any element of the offense, Millard v.

7

<u>Lynaugh</u>, 810 F.2d 1403, 1407-08 (5th Cir.), <u>cert. denied</u>, 44 U.S. 838 (1987). No basis for a colorable claim exists. Fearance does not allege, nor can he, that the Court of Criminal Appeals' reversal of his initial conviction and sentence based on <u>Witherspoon</u> error constituted an implied acquittal on any element of the offense of capital murder. This claim is foreclosed as a matter of law.

**IV.**

Fearance next suggests that the jury was not provided with the constitutionally required instruction as to the proper consideration to be afforded mitigating evidence adduced at trial. He identifies five pieces of evidence that he characterizes as "mitigating".[4] The district court concluded that the mitigating quality of this evidence was "extremely limited," and we agree.

First, Fearance presented witness Roland Benavidez who confronted him outside the victim's apartment shortly after the murder and testified essentially that the petitioner was "somewhat dazed". Second, a forensic psychiatrist testified that Fearance exhibited an anti-social personality disorder. Next, Fearance introduced testimony from his mother that his father had left home when he was only two years old, and that in the months prior to the capital murder he had been "withdrawn and pulled back". She also testified that she had taken him to the mental health/mental

---

[4] Despite the language of <u>Penry v. Lynaugh</u>, 492 U.S. 302, 311 (1989), implying that a "request" for a jury instruction is a prerequisite to raising this argument, we note that the Texas courts have held that failure to object at trial or request an additional instruction is not procedurally barred. <u>Black v. State</u>, 816 S.W.2d 350 (Tex. Crim. App. 1991).

retardation center for help approximately one month before the offense. Finally, Fearance discerns mitigating evidence in his mother's testimony concerning his role as a good husband and father and in providing support for his family. He characterizes these attributes as "positive character traits in evidence of his broken home as a child."

In Graham v. Collins, 113 S. Ct. 892, 895 (1993), the petitioner argued that the Eighth and Fourteenth Amendments compelled an instruction to the sentencing jury that it could consider "mitigating evidence" of his "family background" and "positive character traits." The Court responded "because this case comes to us on collateral review, however, we must first decide whether the relief that petitioner seeks would require announcement of a new rule of constitutional law, in contravention of the principle set forth in Teague v. Lane." Id. (citation omitted) As Fearance was convicted in 1981, we likewise conclude that this claim is barred by Teague.

In Graham, the petitioner urged that evidence concerning his "upbringing and positive character traits" (introduced via testimony by his family) compelled the trial court to instruct the sentencing jury that it could consider this evidence in answering the necessary special issues. But "[u]nless reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor, we are barred from doing so now." Id. 898 (citation omitted). "Surveying the legal landscape as it then existed, we

9

conclude that it would have been anything but clear to reasonable jurists in [1981] that petitioner's sentencing proceeding did not comport with the Constitution." Id.

The Supreme Court in Jurek v. Texas, 428 U.S. 262 (1976), "examined the very statutory scheme under which" Fearance "was sentenced to conclude that it struck an appropriate balance between . . . constitutional concerns." Graham, 113 S. Ct. at 898. "The court thus rejected the attack on the entire statutory scheme for imposing the death penalty and in particular the attack on the so-called 'special issues'." Id. "To the contrary, to most readers at least, [the] cases reasonably would have been read as upholding the constitutional *validity* of Texas's capital-sentencing scheme with respect to mitigating evidence and otherwise." Id. at 900. "[T]he Texas statute satisfied the commands of the Eighth Amendment: it permitted the petitioner to place before the jury whatever mitigating evidence he could show . . . while focusing the jury's attention upon what that evidence revealed about the defendant's capacity for deliberation and prospects for rehabilitation." Id.

The only chance Fearance has to avoid this Teague bar is to place his claim squarely within the confines recognized by Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 1060 (1989). "In that case, the court overturned the prisoner's death sentence, finding that the Texas special issues provided no genuine opportunity for the jury to give mitigating evidence of his mental retardation and abused childhood." Id. at 901. Significantly, the Court held in

10

<u>Penry</u> that the result of that case was dictated by existing precedent. See <u>Penry</u>, 492 U.S. at 318-319. Nonetheless, only evidence within the narrow confines of the corridor of mitigating evidence recognized by <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982) and <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978) (plurality opinion), is immune from the standard <u>Teague</u> bar.[5] That <u>Penry</u> only recognized a very limited set of potentially mitigating evidence as <u>ipso facto</u> sufficient to compel a jury instruction is settled. "We . . . have construed <u>Penry</u> to mean that the capital defendant must be able to demonstrate that his crime is attributable to a uniquely severe disability." <u>Allridge v. Scott</u>, 41 F.3d 213, 222 (5th Cir. 1994) (citation omitted); <u>Graham</u>, 113 S. Ct. at 901 n.3. ("Nor does [<u>Graham</u>] dispute that some types of mitigating evidence can fully be considered by sentencer in the absence of special jury instructions.")

A jury instruction on Fearance's family history and positive character traits could not have been dictated by earlier precedent. <u>Graham</u>, 113 S. Ct. at 902 (Texas special issues provide the court with adequate consideration "regard[ing] the circumstances of [defendant's] family background and positive character traits."). Accordingly, all that remains to be considered is Fearance's evidence of being "somewhat dazed", exhibiting an antisocial personality disorder, and acting

---

[5] Even pure <u>Penry</u> evidence might not be of avail to Fearance since the court in <u>Penry</u> relied heavily on its prior decision in <u>Eddings v. Oklahoma</u>, which was decided in 1982. See <u>Penry</u>, 492 U.S. at 314-319. Of course, this was after Fearance's conviction.

11

"withdrawn" and "pulled back". Fearance, however, provides no authority that commands a court to distinguish these types of mitigating evidence from all other forms of mitigating evidence "having some bearing on the defendant's moral culpability" nor does he assert that they constitute a "uniquely severe disability." Ultimately, he lacks the requisite pre-1981 precedent that would remove his evidence from the general rule that potentially mitigating evidence does not require a special issue to the jury in Texas. Graham, 113 S. Ct. at 902 (rejecting "that a defendant is entitled to special instructions whenever he can offer mitigating evidence that has *some* arguable relevance beyond the special issues"). The jury could have given effect to whatever mitigating impact it saw in Fearance's emotional makeup within the ambit of the Texas special issues without a Penry instruction. Graham v. Collins, 113 S. Ct. at 902.

## V.

Fearance now attempts to convert the failure of trial counsel to introduce detailed evidence of his "antisocial personality disorder" into a Sixth Amendment ineffective assistance of counsel claim. Significantly, he does not allege that his counsel was deficient or incompetent but that the mere operation of Texas's sentencing scheme rendered him presumptively so. Although such a species of ineffective assistance *can* exist by operation of state statute,[6] this court "do[es] not believe that the Texas

---

[6] See Brooks v. Tennessee, 406 U.S. 605 (1972); Herring v. New York, 422 U.S. 853 (1975).

12

sentencing scheme interfered with counsel's decisions in the manner contemplated by these cases."  May v. Collins, 948 F.2d 162, 167 (5th Cir. 1991).

Fearance, like the petitioner in May, contends that Texas law at the time of the second trial for capital murder in 1981 effectively prevented counsel from adequately investigating potential sources of mitigating circumstances evidence because his counsel believed "that there was no vehicle in the Texas capital sentencing scheme for the jury's consideration of evidence of exclusively mitigating nature."  This is, of course, not true. "Texas law did not prevent counsel from presenting mitigating evidence.  Indeed, the facial validity of the Texas statute was upheld upon the express understanding that the special issues had been interpreted to allow the presentation of mitigating evidence. Jurek v. Texas, 428 U.S. 262, 272 (1976)."  May, 948 F.2d at 168 (internal citations omitted).

Even more devastating to Fearance, his own trial counsel's affidavit upon which he relies to support such an argument does not necessarily support this theory.  Although counsel does refer to his belief that Texas law did not provide a vehicle to introduce mitigating evidence, he further notes that "he decided not to adduce evidence of [Fearance's] antisocial personality disorder after learning of same [sic] during his investigation because he recognized that the state would probably adduce similar evidence, being familiar with the record of the first capital trial in which Dr. James Grigson had testified for

13

the state."  This is the essence of a tactical decision, and it was in no way professionally deficient:  certainly some juries might have found antisocial personality disorder to be mitigating, but unquestionably others probably would have rejected that argument or indeed found it more likely that Fearance would commit additional crimes.

That this evidence presented a difficult problem for Fearance and his counsel does not create a colorable constitutional claim.  <u>Black v. Collins</u>, 962 F.2d 394, 407 (5th Cir. 1992).  In <u>Black</u> the petitioner argued that "the Texas sentencing procedure interferes dramatically with the defendant's choice of whether and how to present mental-health based evidence."  This court does not credit such an argument:

> While the operation of Texas capital sentencing scheme at the time of [petitioner's] trial may have caused counsel to make tactical decisions that counsel might not otherwise have made, we do not think that this rose to a level of direct government interference with defense counsel's ability to conduct the defense as involved in <u>Brooks</u> and <u>Herring</u>.  Every substantive criminal statute and death penalty statute contains certain elements, the finding of which are required for a verdict of guilty or a sentence of death, as the case may be.  Counsel's tactical decisions about what kind of evidence to present are always challenged to the requirements of the statute under which the state proceeds.  Were we to conclude that the rule of <u>Brooks</u> and <u>Herring</u> is triggered by statutes that compel tactical decisions about what kind of evidence to present, that rule would be virtually unlimited and would convert every criminal statute and capital sentencing scheme into a predicate Sixth Amendment claim for ineffective assistance of counsel.

14

May, 948 F.2d at 167-168.  This court has repeatedly rejected the notion that there is an infirmity imbedded in the Texas sentencing scheme precluding counsel from performing effectively.  See May v. Collins, 948 F.2d 162, 167-68 (5th Cir. 1991), cert. denied, 112 S. Ct. 907 (1992); Black v. Collins, 962 F.2d 394, 407 (5th Cir.), cert. denied, 112 S. Ct. 2983 (1992); Andrews v. Collins, 21 F.3d 612, 630 (1994).

## VI.

Fearance, without much enthusiasm, also contends that the trial court's refusal to instruct the jury on the proper definitions of the terms "deliberately" and "probability" unconstitutionally undermines the selection function of the Texas capital sentencing procedure.  Yet this court in James v. Collins, 987 F.2d 1116, 1120 (5th Cir. 1993), specifically rejected the argument that "Texas's capital sentencing scheme was impermissibly applied" because of the trial court's refusal to "to give the sentencing jury definitions for the terms deliberately [and] probability."  See also Griffin v. Lynaugh, 823 F.2d 856, 865 (5th Cir. 1987) cert. denied, 484 U.S. 1079 (1988);  Milton v. Procunier, 744 F.2d 1091, 1096 (5th Cir. 1984), cert. denied, 471 U.S. 1030 (1985).  In response, all Fearance can contend is that the Supreme Court's recent decision in Tuilaepa v. California, 114 S. Ct. 2630 (1994), casts doubt on the validity of this holding.

Numerous flaws are apparent with such an approach, however.  Most importantly, petitioner is foreclosed from relying on Tuilaepa because of Teague v. Lane.  Fearance may only benefit

15

from decisions of the Supreme Court in effect upon his conviction in 1981. Consequently, if this recent case casts any doubt concerning James, it will need to be raised by a capital murderer on direct appeal. Moreover, if anything, Tuilaepa supports the propriety of the trial court's refusal to instruct the jury on definitions of deliberately or probability. The decision repeatedly cites Jurek v. Texas for factors that have some "common-sense core of meaning . . . that criminal juries should be capable of understanding." Id. at 2636 (omission in original) (citing Jurek v. Texas, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)). Indeed, the Court in Tuilaepa specifically cites the following sentence from Jurek as a non-vague factor: "whether there is a probability that a defendant would commit cruel acts of violence that would constitute a continuing threat to society". Id. (emphasis added) (citing Jurek, 428 U.S. at 274-276). In any event, it is inconceivable that all rational jurists would have concluded in 1981 that "deliberately" and "probability" were unconstitutionally vague.

## VII.

Finally, Fearance attempts to manufacture a Simmons v. South Carolina, 114 S. Ct. 2187 (1994), claim from the following exchange during closing arguments:

> [Prosecution]: [W]e think the sanctity of the home has got to be preserved; the people have got to be able to go to bed at night, put their head down on that pillow and not worry about this man creeping in here. That's why the law is on the books, because we're going to protect our homes. We're going to try. We can't protect our citizens, can we, very well,

16

if we've got this man running loose.  We've sent him to the pen twice.  That didn't get his attention.   Go down there for two sentences; concurrent; total of four years in '72.  Back out in '73.  Five years.  Back out in '77.   He's talking about big life sentences.  Don't be fooled, folks.

[Defense]:  Your Honor, I'll --

[Prosecution]:  Don't be fooled by these life sentences.

[Defense]:  Your Honor, I object to that; he's asking the jury directly to speculate about how long the Defendant would have to serve.

[Prosecution]:  No, I'm not either.

[Court]:   The jury is not going to concern themselves about the execution of sentence; I've instructed them on that.

[Prosecution]:  I'm referring to his comments.

[Defense]:  Sir, I'd ask that you instruct the jury not to

[Court]:  They have the law in that regard.

[Defense]:  Your Honor, we'd respectfully move for a mistrial based on his --

The Court of Criminal Appeals found on direct appeal that Fearance's counsel inaccurately sought to convince the jury that had it imposed a life sentence, Fearance would have remained in prison for the rest of his life.  Fearance v. State, 771 S.W.2d at 486, 514.  Because the comments of the prosecutor do not misstate state law, Caldwell v. Mississippi, 472 U.S. 320 (1985), is inapposite.  Dugger v. Adams, 489 U.S. 401, 407, 109 S. Ct. 1215 (1989) ("To establish a Caldwell violation, defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law.")

17

Resort to <u>Simmons</u> is of no more avail. This court recently held in <u>Allridge v. Scott</u>, 41 F.3d 213, 222 (5th Cir. 1994), that <u>Simmons</u> applies "when, *and only when*, 1) the state argues that a defendant represents a future danger to society, and 2) the defendant is legally ineligible for parole." (emphasis in original). "Because Texas did not statutorily provide for parole ineligibility at the time of" Fearance's conviction, reliance on <u>Simmons</u> is impossible. <u>Id</u>.[7]

## VIII.

Fearance also notes six other possible claims that he concedes are foreclosed by prior decisions of this court or present a likelihood of merit only upon action of the Supreme Court. He wishes to preserve these arguments in light of the possibility that intervening decisions of the Supreme Court or this circuit could enhance their prospects of success. We acknowledge his reference to these currently meritless claims.[8]

## CONCLUSION

For the foregoing reasons, this court **DENIES** a certificate of probable cause to appeal.

---

[7] The prosecutor's comment might less critically be viewed as the Texas Court of Criminal Appeals did, a response to defense counsel's misstatement. Even if the prosecutor came close to violating the state law that prohibits the jury from considering the possibility of parole, this court has no authority to correct errors of state law unless they transgress constitutional bounds.

[8] Fearance asserts constitutional error in a mere administration of an oath to the jury; in the court's forcing him to exercise a peremptory challenge against a particular venirewomen; in the disqualification of a venireman under the <u>Witherspoon</u>/<u>Adams</u> standard; in excusing two different veniremen who were not disqualified under that standard; and in regard to the prosecutor's reference before the sentencing jury that the death sentence would be "with no appeal". We also note that Fearance does not raise a <u>Ford v. Wainwright</u>, 477 U.S. 399, 106 S. Ct. 2595 (1986), claim in this appeal of the denial of certificate of probable cause but recites some of the evidence he adduced in the district court.

18